We have one case to be argued on the appeals calendar today. That is Komavilla-Zaruma v. Garland. It's case number 20-3230. I am told all counsel is ready. I see you, Ms. Garcia, on the Zoom. I will say, Mr. Curban, if you could make sure that the mics are in a place where we can hear you well. Sure. We appreciate it. And you have reserved one minute for rebuttal. Is that correct? Yes, I have. Okay. When you're ready, sir, we're ready for you. All right. Good afternoon. My name is Ruben Curban. I'm attorney for the respondent, Rosa Pomavilla, who's in the courtroom seated behind me. This appeal stems from two issues. Number one, whether or not the judge erred in admitting a statement, a sworn statement, called the I-867 late in the game. There's a 15-day call-up rule in immigration court. The government had plenty of time. They had access to this document. The document was admitted at the last few minutes of the hearing as rebuttal evidence. However, the document was never made available to counsel at the time. Counsel, can I ask you a process question before you get too far into that? Sure. The BIA determined that that issue was waived, and you don't address waiver in your brief. So have you forfeited any argument that that evidentiary conclusion has been waived? All right. So assuming that that issue was waived, I will just turn to the document itself, which is my second argument. The document that was offered into evidence is the I-867. You guys have a record of it. The key issue with the adverse credibility finding was that the petitioner in this case stated that she had been interviewed in English when this document was prepared. The government and the court said, hey, you know, you've initialed every single page. It's impossible that this was done in English. You only speak Spanish. So firstly, I'd like to include that there's four pages. This document consists of four pages. The only page that has a certification that's signed by my client, not initialed, and sworn to by the officer with the signature of a witness, says I have read this statement consisting of one page, which includes this page, et cetera. Yet there are four pages that were offered into evidence, and it's those four pages that are being used to rebut my client's statements. In addition to that, none of the responses that are offered on the preceding three pages offer any sort of detailed information that could not already be ascertained from the petitioner's passport. The only responses that had any detail, her name, what country she's from, her date of birth, all of those are pieces of information that the officer could have already lifted from her passport. When she was interviewed at her credible fear, about a year later in September, the officer, at the conclusion of her credible fear interview, brought this very issue up to her. And he said, after you recorded the board, an officer asked you some questions and put your initials on some papers and also signed at the end. Do you remember that? And she responded, it was the same day, they made us sign papers, I didn't even know what I was doing. He just put the paper in front of us and told us to sign. He goes on to say, according to the statement, the officer asked you if you were afraid to return to Ecuador and you told him no. Sir, can you slow down and or give me the page in the record so I can follow along? All right. So, I am referring to ROP page 36, where this is consisting of the documents that were being offered into evidence, so that's referring to the sworn statement. And then the credible fear interview is also in the ROP. I'll give you the page for that. ROP at 36. That should be it. 36? 36. All right. So, the officer asks Ms. Pomovia about this very issue. And Mrs. Pomovia, several years before her hearing, doubles down and says, he never asked me anything. He said things, but I couldn't really understand them. Most of it was in English, and one officer had hit me. I was scared. When we crossed the river, there was an officer there. We started running. Then he yelled at us and we stopped. There were five of us. After he caught us, he started hitting us on the back with something. I don't exactly know what it was, but it was something he carried on his belt. I was really frightened. And so, I want to talk about what we think Remsa Mayer compels us to do. In this instance, there's four aspects of the interview that we need to be determining whether or not they were reliable. Which of the ones of the Remsa Mayer factors do you think are most applicable to your client? All right. So, going on that decision, the third element says, an interview may be deemed less reliable if the alien appears to have been reluctant to reveal information to INS officers because of prior interrogation sessions or other coercive experiences in his or her home country. So, firstly, the petitioner in this case had just been beaten by Border Patrol officers as she was crossing the border. She is then subsequently interviewed by, supposedly, an officer in the same uniform and people had just beat her. In addition to that, she's 19 years old at the time. This is a girl who had been raped repeatedly from the age of 12 to 19. Somebody who's been raped from the age of 12 to 19, ongoing basis, is not in a clear right of mind. Both the BIA and the immigration court completely neglected to consider that she had been suffering and diagnosed with PTSD. What do you make of the fact that, or what would you say about the aspect of the Remsa Mayer doctrine that suggests whether or not the questions were designed to elicit, or would have elicited results? So, it talks about questions that are generally asked during a credible fear interview because in a credible fear interview, they're fairly detailed questions and they're very detailed responses. These are yes or no questions. They're summary questions. And so, based on that Ramsamir case, I would say it's merely summary. They're inconclusive and it's not a verbatim account of actually what happened. As I said earlier, all responses are things that could have been lifted from her Ecuadorian passport. Counsel, can I ask, is your argument that application of those factors considered by us requires remand? Or is your argument that the agency is required to consider those factors in assessing a border interview as part of a credibility determination, such that it was sort of procedural error, and therefore, for that reason alone, has to go back to the IJA to consider the factors in the first instance? Yes, for procedural error as well, mainly because I believe that the document that the judge relied on and the BAA used to upheld the decision was factually deficient. It consists of four pages. The certification only talks about one of one page. If there were four pages, why wouldn't he have written one of four pages? Yeah, that's not direct, that's not responsive to my question, so maybe my question wasn't clear. Do you understand the rule of Ramasamea to be that an IJA has to consider those four factors where they have some pertinence, such that that failure alone is a basis to remand? Yes, I do believe that, that that failure alone is a basis to remand, Your Honor. I'm sure Ms. Murcia would say that the totality of circumstances is enough for validating the IJA and the BIA's conclusion that the testimony was not credible. What would your response to that be? Again, I would say she's completely incorrect. Both the NTA, if you look at the NTA, you look at the initial interview, they contain false statements by an immigration officer. The NTA on the second page, which I also argued in my opening brief should be defective, says that the officer read that document in Spanish and indicated the time and place of the hearing. There was no time and place. If you look at page one of the NTA, it says to be determined. Yet, how could he have told the person that he knew the time and place and relayed that in the Spanish language? So that's just another example of defective documents or false attestations by government officials. So my client would be 42B eligible, but for the defective NTA, she has a child that suffers from extreme learning disabilities and autism. She entered the country in May of 2013. If this case were to be remanded, she would also become 42B eligible. Okay, we'll see you back on the floor. Thank you. And when you're ready, Ms. Murcia. Good afternoon, Your Honors. Just double-checking my microphone is working. You can hear me? Yes, thank you. Okay, thank you. May it please the Court, please ask the Murcia of the Office of Immigration Litigation for the respondent. There are two main issues before the Court today. First, whether Ms. Pomovia Zeruba properly thought or challenged the mission of the Border Statement and otherwise waived challenge to the Board's waiver determination in this case. I think we essentially got a concession on the abandonment of the waiver issue. Okay. And alternatively, even assuming the challenge to the mission of the Border Review is properly before the Court, whether the immigration judge properly admitted the Border Statement and whether substantial evidence otherwise supports the agency's Adverse Credibility Fund. Here, there's no evidence that I.J. erred in admitting the Border Statement. The petitioner makes no arguments that the evidence was not probative or the admission was not fundamentally fair. Assuming that the submission was both probative and fundamentally fair, there was no reason that the immigration judge erred in relying on the Border Statement as part of the Adverse Credibility Fund. And in this respect, substantial evidence supports the immigration judge's reliance on the statement in finding Pomovia Zeruba not credible. Do you agree, counsel, that the Ramseychire factors were not considered by the I.J.? Well, the immigration judge here gave the opportunity to counsel to raise any objections regarding the reliability of the Border Statement. I mean, he questioned him and he said, do you have any argument regarding the fact that I have problems with credibility here based on the Border Statement? And both petitioners and counsel's only response was the explanation or the proposed explanation to her recollection that that border interview was not conducted in English. However, when on appeal to the board, he brings up the question, the board did consider the arguments that were brought up on appeal and said, we don't find any reason to find the border interview here not reliable or that the immigration judge erred in relying on the Border Statement. To be frank, the only response that the petitioner had during her testimony when questioned to the immigration judge as to why the Border Statement should not be relied upon was that it wasn't in English. However, the immigration judge rightfully pointed out that the document itself said it was in Spanish and as the board pointed out, there are other indications of its reliability. Like in Rancho Verde and also in the other case that the board cited saying, here we have the initial statement stating, if you have a fear or concern about being removed from the United States or about being sent home, you should tell me so during the interview because you may not have another chance. The question specifically stated, do you understand what I said to you? Yes. Do you have any questions? No. Are you willing to answer my questions at this time? Yes. There's no indication at the time of the border interview that there was any duress or any of the other factors that in Rancho Verde would indicate that this interview is unreliable. Well, but the later statements at the credibility finding, don't you think those implicate the factors about duress at the very least? Well, frankly, Your Honor, the petitioner has given three different explanations about border interviews. Right, but we have a case that tells us what to do, what analysis the IJ should engage in and what factors should be considered when you have a discrepancy between a border interview and a later statement or set of claims and the like. And I guess I'll go back to my original question, which again, I don't think I got a response to. Wasn't the IJ required to consider those factors in light of the fact that the discrepancy resulted between a border interview and a later interview? So in assessing the credibility of the border interview, doesn't our law require consideration of those factors? Your Honor, I think the immigration judge could make that determination here and ask the petitioner, which was done here, about if she had any response to the fact that these statements differed to her later statements, both her credible fear and her testimony. I'm so sorry, but this is actually really important. Let me just make sure that I'm – there seems to be two things that I just want to make sure we're treating distinctly. One is, do you agree that Remsemaier requires the IJ to consider those factors? And then two, do you think the IJ did it? And what I think I heard you just say is that at least the answer to the second question was that the IJ did enough. Is that right? But if you could first answer the first question, do you think that if Remsemaier factors were not considered, that would be procedural error requiring us to send back? Your Honor, I think those are two different questions here. First of all, again, I think we would argue about that. Counsel, answer the first one. Just answer the first one. We agree, two separate questions. Please answer the first one. Remsemaier sets out certain factors that the immigration judge can look to. So can look to. However. Need not look to. Can look to. So does that mean your position is that they don't have to look to? I believe that the immigration judge here maybe didn't go in detail into what Remsemaier is. So you've moved on to question two. Let's go back to question one. And now specifically – and you've answered with respect to question one that they can consider them. The remaining question, which I've asked about four times now, Judge Perez asked as well, is must the IJ consider them? Please answer that question. There was no procedural error here because the petitioner did not object to the immigration judge's either submission or consideration. Counsel, we're not trying to trick you. We're trying to get the doctrine. We're asking a very plain question. Do you think our law and that requires an IJ to consider the Remsemaier factors? There's nothing in Remsemaier that at least to my – at my perusal says that there is a set – that in each instance that the immigration judge must go through the factors one by one. How about the Latifi v. Gonzalez case, 430 F. 3rd, 103, which I think could be read to – for a holding that the failure to consider the factors amounted to error. Do you agree with that? Well, Your Honor, I would have to – I would have to look at that case carefully, but I would also – in response, I would cite that there was a board case that came out after Remsemaier, a matter of JCHF. It's not cited by the board here, but it sets out factors similar to – similar to Remsemaier in saying – in which it discusses considering border interviews under the totality of the circumstances. I certainly can't 28J it afterwards. And it says that under the totality of the circumstances, which I believe Judge Perez pointed out, that an immigration judge can consider all of these factors, but not necessarily have to rely on it. So similarly as in Ramsemaier, when a judge is considering reliability of a document, either for weight or submission, an immigration judge can certainly consider the factors laid out by Ramsemaier, but there's nothing in the case law that says that an immigration judge has to go through the factors one by one by one. Under the totality of the circumstances, the immigration judge can consider the document and its weight, and Ramsemaier certainly sets out factors for it to consider, but it does not mandate anything further. So I think you've finally gotten around to saying it is your position that Ramsemaier does not – does not require an IJ. Will you answer what may be an easier question or a less controversial question? Did the IJ do so here? My apologies, Your Honors, if I misunderstood. I believe that the immigration judge properly considered the border of an interview under the totality of the circumstances as it was considered. The immigration judge considered the border interview, provided Petitioner the opportunity to object to his use of the border interview and the weight he was proposing to give to it. But not the factors, right? Did they consider the factors of whether or not the questions were elicited to get them, whether or not there was something causing the petitioner to not be of the best position to be able to answer truthfully? Do you think the four factors were covered? Your Honor, I've seen them over time, but I'm assuming that you want me to continue. Absolutely. It's my time, not yours. Sounds like you may not want to continue. No, I just – I feel like I have to acknowledge it since – Fair enough. In these circumstances, again, I think under the totality of the circumstances that the immigration judge sufficiently provided here, the earlier Your Honor called it a procedural error. And a procedural error is something that the petitioner has to bring up either to the immigration judge or the board. And to the extent that he did here, to the extent that it was possible for him to bring it up here, he didn't actually bring up any procedural error as to objecting either to the submission, the reliability, or the weight of the border interview before the immigration judge. And to the extent that he did so on appeal, the board appropriately considered the factor – considered the reliability of the border interview on appeal. Okay. Thank you so much, Ms. Murcia. We've got – we will take your argument under advisement. Thank you. Thank you very much, Your Honor. Thank you. If I may, to be in my rebuttal, I believe that the judge did not consider any of these factors. I believe that counsel that appeared with the petitioner at that time, had he been even an opportunity – given an opportunity to look at or inspect the documents, which he was not because that was not offered into evidence at any time, he would have noticed right away that there's four pages and there's only – on the certification, which is the last page, it says only one of one, which means that the whole – the whole admission is facially deficient. And so based on Ramsamir, if there's even a suspicion that the statements or the documents that are being used to offer into evidence may not appear reliable, then the BIA should not have used it and the judge should not have used it to make an adverse credibility finding. Because they completely foreclosed my client's entire claim because they thought that because she said that it was done in English, it didn't mean anything. Why would an immigrant who's been raped for years come and tell the judge, hey, the officer asked me these questions in English? What does she gain by saying that? And then why would she then repeat that years later in a credible theory before this hearing was even done? She doubled down on that and that's when I asked her outside also, was this really what happened? Yes, they beat me. They asked me these questions in English. They handed me the piece of paper and said, sign it. Thank you. Okay, that is the last. This is the only case on our argument calendar today, so I will ask our Deputy to please adjourn us. We will take this case under advisement. Thank you. Have a nice weekend.